**NOT RECOMMENDED FOR PUBLICATION**
File Name: 06a0300n.06
Filed: May 1, 2006

No. 05-6237

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| Wanda Watts, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| Commissioner of Social Security, | ) | EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE:     Keith, Merritt, and Daughtrey, Circuit Judges.

**MERRITT, Circuit Judge.** Plaintiff Wanda Watts appeals from a district court judgment affirming the Commissioner's decision to terminate her disability insurance benefits and her supplemental security income benefits. Watts contends that the Commissioner has not adequately demonstrated the required medical improvement in her condition since her last award of benefits in 1997. For the reasons that follow, we affirm the district court.

Watts filed an application for disability insurance benefits in 1992. An Administrative Law Judge found Watts to have a "severe" impairment on the basis of "severe neck pain and thoracic outlet syndrome" [1] that rendered her disabled commencing in April 1991. A continuing disability

---

[1]Thoracic outlet syndrome is a combination of pain, numbness, tingling, weakness, or coldness in the upper extremity caused by pressure on the nerves and/or blood vessels in the thoracic outlet. The thoracic outlet is a space between the rib cage (thorax), and the collar bone (clavicle)

review was performed in August 1997. The records submitted at that time demonstrated that Watts continued to suffer from disabling back problems and depression. Decision of Aug. 27, 1997. The findings of disability in 1992 and 1997 are not in dispute. Another continuing disability review was conducted in 2000 and in January 2001. Watts received a notice that her benefits would be terminated because her health had improved since the last review and award of benefits in 1997. Watts timely requested reconsideration of the decision, arguing that she continues to be disabled because of thoracic outlet syndrome, depression, allergies, blood clots, back problems, high blood pressure, chest pain and chronic bronchitis. Watts received a hearing in October 2001 before a Disability Officer, who affirmed the decision in December 2001. Watts then requested a hearing before an Administrative Law Judge, who found Watts was not disabled after January 1, 2001. The ALJ found that Watts currently suffered from the combined "severe" impairments of degenerative disc disease of the lumbar spine, a history of thoracic outlet syndrome, history of hypertension and an unspecified anxiety disorder, but found that Watts had improved since the review in 1997. The ALJ went on to conclude that Watts had the residual functional capacity for a limited range of light

---

through which the main blood vessels and nerves pass from the neck and thorax into the arm. The syndrome is a set of symptoms and physical findings that point to a certain diagnosis. Various symptoms and physical findings may be present in different grades of severity and all the symptoms and physical findings are not always present. There are several causes of the syndrome, but the most common underlying cause is compression of the nerves and arteries of the arm in the thoracic outlet. In some cases the cause of compression is evident, such as an extra first rib or other congenital abnormality, whiplash from a car accident or an old fracture of the clavicle, all of which may reduce the space of the outlet. In other cases the cause is not clear. Compression may occur with repetitive activities that require the arms to be held overhead. Source: Website of the Office of Communications and Public Information, National Institutes of Health, Bethesda, Maryland.

work, including her past work as a florist. Decision of June 13, 2003. That decision became final when the Appeals Council denied Watts's request for review. Watts then sought judicial review in the Eastern District of Kentucky. After the parties filed cross-motions for summary judgment, the district court granted the Commissioner's motion and affirmed the Commissioner's decision to cease benefits as of January 2001. *Watts v. Barnhart*, No. 04-233-GWU, Memorandum Opinion at 7 (E.D. Ky June 23, 2005).[2]

We must accept the Secretary's findings if they are supported by substantial evidence. "Substantial evidence" is more than a scintilla of evidence but less than a preponderance. We do not resolve conflicts in the evidence, nor decide questions of credibility. In determining the existence of substantial evidence, we must examine the record as a whole. If the Secretary's decision is supported by substantial evidence, we must affirm even if we would decide the matter differently and even if substantial evidence also supports the opposite conclusion. *Cutlip v. Sec. of Health and Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994); *Nierzwick v. Comm'r of Soc. Sec.*, No. 00-1575, 2001 WL 303522 (6th Cir. Mar. 19, 2001).

Moreover, there is no presumption of continuing disability. *Cutlip*, 25 F.3d at 286-87 & n.1. Instead, the Secretary applies the procedures set out in 20 C.F.R. §§ 404.1594 and 416.994. The first part of the evaluative process, which is the issue in this appeal, is whether medical improvement has been demonstrated. A claimant's disability benefits may be terminated if there has been any medical improvement, if the improvement is related to the ability to work, and if the claimant is

---

[2]The district court's Memorandum Opinion could not be located in the Joint Appendix.

currently able to engage in substantial gainful activity. 20 C.F.R. § 404.1594(a). "Medical improvement" is "any decrease in the medical severity of . . . impairment(s) [that] was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). A determination of medical improvement "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)." And, a medical improvement is only related to an individual's ability to work "if there has been a decrease in the severity . . . of the impairment(s) present at the time of the most recent favorable medical decision and an increase in your functional capacity to do basic work activities." 20 C.F.R. § 404.1594(b)(3).

This appeal turns on whether substantial evidence shows that there has been medical improvement in Watts' impairment. The August 1997 review serves as the comparison point because it is the most recent favorable medical decision finding Watts to be disabled. The record indicates that in 1997 Watts had x-ray evidence of degenerative disc disease, congenital fusion of the cervical spine, and two ruptured discs and that she was recovering from a right rib resection (removal of a rib) for thoracic outlet syndrome. Watts was suffering from chronic pain in her back and lower extremities. She also suffered from chronic migraines. Her treating physician indicated she was unable to sustain any lifting or carrying and that she had diminished capacity to stand or walk. The decision in 2001 to terminate benefits was based on doctors' reports from September and December 2000. The ALJ used medical reports and testimony from treating and non-treating doctors after 2000 and up to the time of the hearing to make his decision, as well as additional information from medical reviewers about Watts's functional capacity based on her medical records.

The medical evidence reveals that by the late 1990s, Watts's back problems were diminishing and the symptoms from the thoracic outlet syndrome were improving. Both Watts and her treating physician reported in 1999 that she was doing "pretty well." She was taking only over-the-counter pain relievers for pain at that time. In October 2000, Watts was referred to a doctor by the Social Security Administration for a consultative examination. The only problems noted at that time were continued back pain and some pain in the right arm, as well as depression. Watts was comfortable in the sitting and supine positions; her neurological and vascular systems were normal. Watts went to her treating physician in January 2001 for chest pain, but her heart and vascular systems were normal. On a follow up visit in March 2001, the doctor prescribed allergy medication to help with bronchitis, asthma and sinusitis. On visits to her treating physician in 2001, the doctor noted continued pain from thoracic outlet syndrome, especially with overhead activities, but Watts's main complaints at that time seemed to stem from depression and respiratory ailments. Both of these conditions were treated with prescription medication for allergies and depression, and Watts noted some improvement in her mood by late 2001.

Watts fractured a vertebrae in August 2002 after attempting to lift a "pretty big" bag of mulch. Medical reports after this incident and from ongoing follow-up visits in 2002 indicate continued back and right side pain and moderate to marked osteoporosis, but no acute distress. During 2002 and 2003, Watts continued to be treated for back pain, but by March 2003 she told her treating physician that it was improving and her doctor said that she was making "good progress." Despite the pain, MRI scans and x-rays during this period indicate degenerative disc disease but no other serious problem requiring surgery or other treatment. Both Watts's treating physicians and

the consultative physicians have noted that Watts has normal range of motion in the neck, mild limitation of motion in the back, right arm and hips, no atrophy, no spasms, no motor weakness and good grip strength. Neurologic tests continued to be normal.

The record demonstrates that Watts has undergone no hospitalization during this period and that her daily activities demonstrate that she is not totally disabled. During the relevant period, Watts went for treatment twice after injuring herself while attempting vigorous activity. In 1999, she was treated for a large splinter in her finger that occurred while she was cleaning baseboards, and in 2002, she was treated for back pain after she tried to lift a bag of mulch. Both of these injuries demonstrate that Watts believed she was able to tend her garden and undertake strenuous household chores. She therefore engages in at least some physical activity and other aspects of her daily routine are not incompatible with sedentary work.

In response to the medical evidence, Watts argues that because she still has pain and medical problems that have been labeled "severe," there has been no medical improvement. While we acknowledge that Watts undoubtedly still has pain and unresolved medical issues, neither her treating physicians nor the consultative physicians have stated that she has not improved since 1997. As stated above, we do not undertake a *de novo* review of the evidence or resolve conflicts in the evidence. Watts has pointed to no new evidence or evidence that was overlooked in the proceedings below. Given our limited review powers in this case, we must affirm the Commissioner's decision if substantial evidence supports that determination, which it does. We also wish to note, as did the district court below, that the depression and respiratory problems Watts now complains of were not part of the 1992 or 1997 favorable disability decisions. These ailments seem to have surfaced since

the last favorable decision in 1997, and they do not alter our review of the findings of the ALJ. We look primarily to evidence demonstrating the improvement in the thoracic outlet syndrome and back pain that formed the basis of Watts's original application in 1992 and the continuation of benefits in 1997, and we find substantial evidence in the record that these conditions have improved.

It is clear that Watts was disabled in 1992 and that her condition did not improve, and may have in fact worsened, by the time of the disability review in 1997. However, by the close of the 1990s, the evidence, taken as a whole, suggests that Watts's primary complaint in her 1992 disability application and in the disability review process in 1997, thoracic outlet syndrome, was improving. Her symptoms have subsided and the medical reports indicate improvement. As for her ability to work, none of Watts's treating doctors during the relevant period (except Dr. Golden in a brief reference to limitations on overhead reaching) made detailed functional capacity analyses, which leaves the functional capacity forms from the medical reviewers as the best evidence. Their reports provide substantial evidence that Watts is capable of a limited range of light work, including her past work as a florist, as found by the ALJ.

The Commissioner's decision is supported by substantial evidence and in accordance with law and is therefore affirmed.